6 P.3d 323

**STATE of Arizona, and Richard M. Romley, Maricopa County Attorney, Petitioner,**

**v.**

**The Honorable Michael D. JONES, Judge of the Superior Court of the State of Arizona, In and For the COUNTY OF MARICOPA, Respondent Judge,**

**John William Roche, Real Party in Interest.**

**No. 1 CA–SA 00–0039.**

Court of Appeals of Arizona, Division 1, Department C.

June 13, 2000.

Reconsideration Denied June 27, 2000.

Richard M. Romley, Maricopa County Attorney by Gerald R. Grant, Deputy County Attorney, Phoenix, Attorneys for Petitioner.

George M. Sterling, Jr., Phoenix, Attorney for Real Party in Interest.

## OPINION

EHRLICH, Judge.

¶ 1 We accepted jurisdiction of this special action to decide whether the rule of *corpus delicti* applies to a preliminary hearing. We conclude that it does not, and we therefore grant the relief requested by the State.

### FACTUAL AND PROCEDURAL HISTORY

¶ 2 On the evening of October 15, 1999, Phoenix Police Officer Dave Szenyes positioned himself in the alley behind the residence of John Roche to assist in an arrest not involving Roche. After approximately thirty minutes, Officer Szenyes peered through the fence separating the alley from this house and observed a man standing on the patio yelling unintelligible words. The man later was identified as Roche.

¶ 3 After Officer Szenyes saw Roche come out to the back patio several times, he heard an explosion that sounded like a gunshot or fireworks, but his view was obscured such that he never saw Roche carry or fire a weapon, nor did he see a characteristic flash. The officer did see Roche reappear on the patio, but the officer was unable to inquire about the explosion because he still was involved with the arrest for which he originally was called.

¶ 4 By the time that arrest was complete, Roche was standing in the driveway of his house. Officer Szenyes approached him, identifying himself as a police officer, and asked Roche if he could speak with him. Roche agreed. Officer Szenyes then asked Roche if he could smell Roche's hands, and Roche cooperated. Being unable to detect an odor of sulfur or gunpowder residue on Roche's hands, the officer requested Roche's identification. Roche indicated that the information was in his house, at which time both men went inside the residence.

¶ 5 Indoors, Officer Szenyes plainly saw a handgun on a table. After unloading the gun for his safety, he advised Roche of Roche's *Miranda* rights.[1] Officer Szenyes then ex-

plained that he had heard an explosion in the alley earlier in the evening, whereupon Roche confessed to discharging a handgun, and he gave the officer a .38 caliber shell. Officer Szenyes asked Roche where he had pointed the gun when he fired it, and Roche responded, "Down at the ground by that stump," referring to a tree stump in Roche's backyard near the alley. Roche also gave Officer Szenyes a .38 caliber weapon, which Roche said was the weapon that he had fired.

¶ 6 On October 19, 1999, the State filed a complaint, charging Roche with disorderly conduct, a class 6 dangerous felony. It alleged that Roche had intentionally or knowingly disturbed the peace or quiet of a neighborhood, family or person by recklessly handling, displaying or discharging a firearm. Based on Officer Szenyes' testimony at the preliminary hearing, the justice of the peace found probable cause to hold Roche to answer for the crime with which he was charged.

¶ 7 Roche filed a motion in superior court to remand the matter for a new finding of probable cause, arguing the insufficiency of the evidence against him. The State responded that the evidence was sufficient and that, in the alternative, the rule of *corpus delicti* did not apply to a preliminary hearing.[2] The court remanded the case for a new determination of probable cause "where proper foundation for Defendant's statements shall be made." The State then petitioned for special action, raising two issues:

1. Whether the rule of *corpus delicti* pertains to preliminary hearings; and,

2. If so, was there a reasonable inference that sufficient evidence existed to admit Roche's statements.

### JURISDICTION ·

¶ 8 Review by special action is discretionary, *see State ex rel. Neely v. Rodriguez*, 165 Ariz. 74, 76 n. 4, 796 P.2d 876, 878 n. 4 (1990), and, therefore, the decision to accept jurisdiction encompasses a variety of determinants. *See Piner v. Superior Court*,

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Defense counsel errs when he contends that the issue was not raised below.

192 Ariz. 182, 184–85, 962 P.2d 909, 911–12 (1998). This petition presents an issue of first impression and one that is of statewide significance, two persuasive factors. *See Fiveash v. Superior Court,* 156 Ariz. 422, 423, 752 P.2d 511, 512 (App.1988). Additionally, the State has no remedy by appeal. Ariz. R.P. Spec. Actions 1; *see State ex rel. Romley v. Superior Court,* 181 Ariz. 378, 380, 891 P.2d 246, 248 (App.1995). We therefore accept jurisdiction.

## DISCUSSION

1. *Development and Rationale of the Rule of Corpus Delicti*

¶ 9 Despite the absence of any clear mandate in English law, early doubts as to the evidentiary value of confessions compelled American courts and legislative bodies to examine whether the confession of the accused person alone would suffice for a conviction. *See* John W. Strong, 1 McCormick On Evidence 555 (4 th ed.1992); Simon Greanleaf, 1 Law of Evidence § 217 (Lewis ed. 1899). Both courts and legal scholars early favored the opinion that it would not. Comment, *California's Corpus Delicti Rule: The Case for Review and Clarification,* 20 U.C.L.A. L.Rev. 1055, 1065 (1973). In fact, Francis Wharton observed that, by the mid–19 th century, within the United States, there was "a growing unwillingness to rest convictions on confessions alone." Francis Wharton, A Treatise of The Law of Evidence in Criminal Issues 313 (3 rd ed. 1855). American jurisprudence eventually insisted that, in order to sustain a conviction based on a confession, the confession must be corroborated by other evidence introduced at trial. *See* Strong, *supra* at 555–56; Greanleaf, *supra* at § 217. Termed the rule of *corpus delicti* ("body of the crime"), this condition is widely recognized and consistently applied in the federal and state courts, including those of Arizona. *See, e.g., Smith v. United States,* 348 U.S. 147, 152–53, 75 S.Ct. 194, 99 L.Ed. 192 (1954); *State v. Villa,* 179 Ariz. 486, 487, 880 P.2d 706, 707 (App.1994).

¶ 10 The rule of *corpus delicti* is that "[a]n accused may not be convicted on his own uncorroborated confessions." *State v. Gillies,* 135 Ariz. 500, 506, 662 P.2d 1007, 1013 (1983), *cert. denied,* 470 U.S. 1059, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985); *see Smith,* 348 U.S. at 152–53, 75 S.Ct. 194; *Villa,* 179 Ariz. at 487, 880 P.2d at 707. Although courts have seldom articulated a precise rationale, they usually cite the regrettable historical experience with false confessions and the concern that convictions lacking in fundamental fairness could too-readily result from these statements. *See Smith,* 348 U.S. at 153, 75 S.Ct. 194; 7 John H. Wigmore, Evidence § 2070, p. 510 (Chadbourn rev. 1978)("The danger lies wholly in a false confession of guilt"); Note, *Proof of the Corpus Delicti Aliunde The Defendant's Confession,* 103 U. Pa. L.Rev. 638, 642 (1955).[3]

¶ 11 Additionally, the rule serves to combat the inherently coercive nature of law-enforcement investigations or otherwise-improper techniques that may be used in securing confessions that then may affect the overall reliability of a defendant's statements. *See Smith,* 348 U.S. at 153, 75 S.Ct. 194; Strong, *supra* at 556. Touching upon the due process implications of the rule, the Supreme Court stated: "Confessions may be unreliable because they are coerced or induced, and although separate doctrines exclude involuntary confessions from consideration by the jury, further caution is warranted because the accused may be unable to establish the involuntary nature of his statements." *Smith,* 348 U.S. at 153, 75 S.Ct. 194 (citations omitted);[4] *but see Developments in the Law—Confessions,* 79 Harv. L.Rev. 938, 1084 (1966) (because there are other safeguards,

---

**3.** Alternative factors have been offered to support the rule of *corpus delicti* rule. According to Greanleaf, the rule originates from the adverse emotional reaction of courts to a conviction based on a confession. *Supra* at § 217. He observed that the rule "best accords with the humanity of the criminal code, and with the great caution applied in receiving and weighing the evidence of confessions in other cases...." Other considerations include that the defendant may be mistaken as to what he is confessing, *see*

L. Best, Evidence §§ 560–62 (3 rd Am. ed.1908), and, perhaps, that a defendant's mental state might lead him to believe or at least claim that he committed a crime. *See Smith,* 348 U.S. at 153, 75 S.Ct. 194.

**4.** In *Opper v. United States,* the Supreme Court provided additional insight into its perception of the *corpus delicti* rule. 348 U.S. 84, 89–90, 75 S.Ct. 158, 99 L.Ed. 101 (1954):

"serious consideration should be given to elimination of the corpus delicti requirement"); Comment, *California's Corpus Delicti Rule, supra* at 1092 (rule is ineffective in preventing convictions on false testimony, and "pragmatic scrutiny" indicates it should be abolished); Note, *Confession Corroboration in New York: A Replacement For The Corpus Delicti Rule,* 46 Fordham L.Rev. 1205, 1235 (1978) (rule duplicates other doctrines regarding the admissibility of confessions). While other legal principles and rules of evidence protect the defendant from involuntary confessions, proof may be difficult to obtain, making this protection inadequate in certain cases. The *corpus delicti* rule thus continues to play an essential part in assuring accuracy and preventing errors in convictions based on confessions. *See Smith,* 348 U.S. at 153, 75 S.Ct. 194.[5]

### 2. Definition and Quantum of Proof to Establish the Corpus Delicti

¶ 12 As said above, *"corpus delicti"* literally means the "body of the crime." The

rule demands that, before a defendant's statements are admissible as evidence of a crime, the State must establish the *corpus delicti* by showing proof of a crime and that someone is responsible for that crime. *See Gillies,* 135 Ariz. at 506, 662 P.2d at 1013; *State v. Gerlaugh,* 134 Ariz. 164, 170, 654 P.2d 800, 806 (1982); *State v. Janise,* 116 Ariz. 557, 559, 570 P.2d 499, 501 (1977); *State v. Hernandez,* 83 Ariz. 279, 281, 320 P.2d 467, 469 (1958).[6] In other words, there must be a basic injury and a showing that this injury was the result of a criminal, rather than a natural or accidental, cause. 1 F. Wharton, WHAARTON'S CRIMINAL LAW § 349 (12th ed.1932). The evidence need not be of the quantum of proof beyond a reasonable doubt. *See Gerlaugh,* 134 Ariz. at 170, 654 P.2d at 806. Rather, all that is required is that a reasonable inference of the *corpus delicti* exists before the statement may be considered. *See Gillies,* 135 Ariz. at 506, 662 P.2d at 1013.[7] Therefore, if sufficient independent evidence exists, that evidence and the confession both may be considered in determining

---

In our country the doubt persists that the zeal of the agencies of prosecution to protect the peace, the self-interest of the accomplice, the maliciousness of an enemy or the aberration or weakness of the accused under the strain of suspicion may tinge or warp the facts of the confession. Admissions, retold at a trial, are much like hearsay, that is, statements not made at the pending trial. They had neither the compulsion of the oath nor the test of cross examination.

5. "The corroboration requirement rests upon the dual assumption that such risks of inaccuracy are serious ones and that juries are unable or disinclined to recognize and accommodate these risks. Since juries are likely to accept confessions uncritically, the demand for corroboration provides a minimal requirement assuring that an untrustworthy confession alone will not lead to conviction." Strong, *supra* at 556.

6. There is no difference whether there is tangible *corpus delicti* as evidence of the crime; the defendant's admission must be corroborated. *See Smith,* 348 U.S. at 154, 75 S.Ct. 194. "An admission which assumes this importance in the presentation of the prosecution's case should not go uncorroborated, and this is true whether we consider the statement an admission of one of the formal 'elements' of the crime or of a fact subsidiary to the proof of these 'elements.'" *Id.* at 155, 75 S.Ct. 194. The corroborating evidence must tend to show the harm and that it was occasioned by criminal activity. Strong,

*supra* at 557. However, it need not tend to show that the defendant was the guilty party. *Id.* Thus, all elements of the offense must be supported by independent evidence or corroborated admissions. *Smith,* 348 U.S. at 156, 75 S.Ct. 194.

7. There has been considerable debate concerning the quantum and type of independent proof needed to substantiate the existence of the *corpus delicti. Opper,* 348 U.S. at 93, 75 S.Ct. 158. "Each case has its own facts admitted and its own corroborative evidence, which leads to patent individualization of the opinions." *Id.*

According to some precedents, the corroborating facts may be of any sort whatsoever, provided that they ultimately tend to show the truth of the confession. Id. at 92, 75 S.Ct. 158; *see* Wigmore, *supra,* § 2071 p. 511. The Supreme Court has held that corroborative evidence only must prove the facts embraced in the confession. *Opper,* 348 U.S. at 93, 75 S.Ct. 158. However, these statements must be corroborated by "substantial independent evidence." *Id.*

The Arizona Supreme Court has adopted a more strict form of the rule, i.e., that the evidence must concern the *corpus delicti. Hernandez,* 83 Ariz. at 282, 320 P.2d at 470.

From a review of the holdings of the various jurisdictions we believe that the correct rule while expressed differently by the respective courts is that the foundational proof by independent evidence is adequate for the purpose

whether a conviction may be based on the defendant's otherwise uncorroborated statements. *See Smith*, 348 U.S. at 154, 75 S.Ct. 194; Strong, *supra* at 557.

### 3. The Application of the Corpus Delicti Rule

 ¶ 13 Application of the *corpus delicti* rule is for the trial court. Strong, *supra* at 563. The requirement of independent proof of the *corpus delicti* mandates that the corroborating evidence tend to prove the commission of the crime before a confession is admissible. *See State v. Weis*, 92 Ariz. 254, 260, 375 P.2d 735, 739 (1962)("[B]efore ... statements are admissible there must be independent evidence tending to prove corpus delicti."). But the order of proof and the sufficiency of the evidence of the *corpus delicti* are matters within the discretion of the trial court. *See Adolfson v. United States*, 159 F.2d 883, 888 (9th Cir.1947)("The order in which evidence to prove the corpus delicti is to be received is not important and is largely a matter within the discretion of the trial court. If proof in the nature of independent corroborative evidence supports the introduction of a confession, the time of its introduction is not important."), *cert. denied*, 331 U.S. 818, 67 S.Ct. 1307, 91 L.Ed. 1836 (1947); *Gerlaugh*, 134 Ariz. at 170, 654 P.2d at 806. "Whether it should be allowed at the particular time is merely a matter of the order of proof and not of its admissibility." *Hernandez*, 83 Ariz. at 283, 320 P.2d at 469. Therefore, it is not so much a condition of admissibility, *Moll v. United States*, 413 F.2d 1233, 1238–39 (5th Cir.1969), as it is a formulation of the required proof to take the evidence to the jury or to sustain the accused's guilt. *See Hernandez*, 83 Ariz. at 282, 320 P.2d at 469.[8]

 ¶ 14 As long as the State ultimately submits adequate proof of the *corpus delicti* before it rests, the defendant's statements may be admitted, *see Gillies*, 135 Ariz. at 505–06, 662 P.2d at 1012–13; *Hernandez*, 83 Ariz. at 283, 320 P.2d at 469,[9] without prejudice. *See Gerlaugh*, 134 Ariz. at 170, 654 P.2d at 806. It is only if the State altogether fails to make this showing that the court should direct an acquittal. *See Gillies*, 135 Ariz. at 506, 662 P.2d at 1013.

 ¶ 15 In light of the policy and practice surrounding the *corpus delicti* rule, an allegation of insufficient proof of the *corpus delicti* during a preliminary hearing is premature. The purpose of a preliminary hearing is to determine whether probable cause exists to hold the person charged with the crime(s) to answer the alleged charges, not to decide the guilt of the accused. ARIZ. R.CRIM. P. 5.3(a); *see State v. Clark*, 126 Ariz. 428, 432, 616 P.2d 888, 892 (1980). Given that purpose, objections regarding the exclusion of evidence on the basis that the evidence was unlawfully obtained are inapplicable. ARIZ. R.CRIM. P. 5.3 (b). Indeed, hearsay may be considered by the magistrate. ARIZ. R.CRIM. P. 5.3(b), 5.4(c). While the finding of probable cause ultimately may be challenged by the defendant pursuant to Arizona Rule of Criminal Procedure 5.5,[10] issues surrounding the competency of the evidence are left to the superior court's determination. ARIZ. R.CRIM. P. 5.3(b), com

---

of allowing the use of confession or incriminating statements if it is sufficient, assuming it is true, to warrant a reasonable inference that the crime charged was actually committed by some person. If such preliminary proof has been submitted the confession or statements may then be used to assist in proving the corpus delicti beyond a reasonable doubt, the degree necessary for conviction." *Id.* Thus, a "confession freely and voluntarily made, the corpus delicti being established even though by circumstantial evidence, will sustain a conviction." *Gerlaugh,* 134 Ariz. at 170, 654 P.2d at 806.

8. In *Hernandez,* the court held that the failure to object to statements on the basis that insufficient proof of the *corpus delicti* had been produced did not constitute a waiver of the right to demand such proof because the statements would become admissible if the proof were ultimately submitted. 83 Ariz. at 283, 320 P.2d at 471. "Whether [the statement] should be allowed at the particular time is merely a matter of the order of proof and not of its admissibility." *Id.*

9. In *Gillies,* the court held that the defendant did not waive the issue of the sufficiency of evidence to establish the *corpus delicti* of the crime charged by not objecting before the incriminating statements were admitted in evidence because the State had until it rested its case to complete its proof. 135 Ariz. at 505–06, 662 P.2d at 1012–13.

10. Rule 5.5 states:
 a. Grounds. A magistrate's determination to bind over a defendant shall be reviewable in

ment; *see Giordenello v. United States,* 357 U.S. 480, 483–84, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958).

¶ 16 Different from a determination of probable cause, the *corpus delicti* rule involves a finding by the superior court of independent evidence to support a conviction, *see Gillies,* 135 Ariz. at 506, 662 P.2d at 1013, not whether probable cause exists to support a criminal charge. Given that the purpose of the preliminary hearing is to determine whether probable cause exists to bind the defendant over to the superior court and that it is not a resolution of the merits of the charge(s), the justification for the *corpus delicti* rule is not pertinent. If the State need only establish the *corpus delicti* any time prior to resting its case, *see Gillies,* 135 Ariz. at 506, 662 P.2d at 1013, it is not required to meet the burden of proving the *corpus delicti* at the preliminary hearing.

¶ 17 Because our answer to the first issue is dispositive, we need not address the second question. The officer heard what seemed to him to have been the discharge of a firearm in the area of Roche's backyard, and Roche gave Officer Szenyes not only the expended shell but the weapon that he claimed to have fired. While this seemingly is enough to establish probable cause that Roche committed the crime of disorderly conduct, ultimately it is a matter that the superior court must consider without an application of the rule of *corpus delicti.*

### CONCLUSION

¶ 18 Because the superior court erroneously applied the *corpus delicti* rule when it ordered that the case be remanded for a new finding of probable cause, we grant the relief requested by the State, and reverse and remand this case for further proceedings consistent with this opinion.

CONCURRING: EDWARD C. VOSS, Judge, and JON W. THOMPSON, Judge.

___

the Superior Court only by a motion for a new finding of probable cause alleging that the defendant was denied a substantial procedural

right, or that no credible evidence of guilt was adduced. This motion shall allege specifically the ways in which such evidence was lacking.